# FRANCISCO OTERO QUILES *v.* STATE OF MARYLAND

[No. 348, September Term, 1967.]

356

[redacted]

*Decided June 10, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Martin Moncarz* for appellant.

*Edward F. Borgerding, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donald Needle, Assistant Attorney General,* and *J. Thomas Clark, State's Attorney for Queen Anne's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was found guilty of assault by a jury in the Circuit Court for Queen Anne's County and sentenced to imprisonment for a term of 8 years.

It appeared that the appellant, who was indigent, spoke Spanish but did not speak or understand English and his request, made through an interpreter, that an attorney fluent in Spanish be appointed to represent him was granted. Prior to trial, his counsel, who maintained a law office in Baltimore City and did not reside or usually practice in Queen Anne's County, asked the State's Attorney to bring to the attention of the trial court that the appellant desired that a "local" attorney be appointed to assist in the selection of a jury. Counsel was informed the request was denied and subsequently made a motion in open court requesting the appointment of additional counsel to assist in the selection of a jury which was denied. In denying

the request the court stated that it was willing to appoint additional counsel but would allow only one fee to be paid by the State for the total representation. The court felt, considering that defense counsel spoke Spanish, that he would be able to examine prospective jurors on the *voir dire* and that an interpreter had been appointed for the trial, that counsel could provide the appellant with effective representation without the appointment of additional counsel. The appellant contends on appeal from the judgment that the denial of the motion denied him due process of law and the effective assistance of counsel. The crux of the contention is that his constitutional rights were violated by the circumstance, *per se,* that his trial, being held in a community where the prospective jurors were unknown to him and his counsel, placed him at a disadvantage in the selection of a jury, especially when the prosecuting attorney may have knowledge of the prospective jurors. We do not agree. The appellant had competent counsel appointed to represent him.[1] The purpose of the *voir dire* examination is to ascertain whether prospective jurors are free from bias and prejudice and capable of making impartial and objective determinations. *Baker v. State,* 3 Md. App. 251; *McIntyre and Davis v. State,* 1 Md. App. 586; *Borman v. State,* 1 Md. App. 276. Thus the appellant, represented as he was by competent counsel, had the means to assure compliance with his right, guaranteed by the Sixth Amendment to the Constitution of the United States and Article 21 of the Maryland Declaration of Rights, that he be tried by an impartial jury. The burden is on a defendant to show that a jury hearing his cause was not impartial. *Jones v. State,* 2 Md. App. 429. We do not think that this burden was carried by the appellant merely by the circumstance that the State's Attorney may have been more familiar with the prospective jurors than the appellant and his counsel. On the reason advanced by the appellant, he was not constitutionally entitled to the appointment of additional counsel to assist in the selection of the jury and we find no error in the denial of the motion. Further, we find no denial of his constitutional rights in

---

1. We think it clear from the record that counsel capably and vigorously represented the appellant's interests throughout the trial.

the selection of the jury. The record does not disclose any showing that the jury which tried the cause was other than impartial and the appellant made no allegation below that it was not impartial nor does he make such an allegation on appeal, merely asserting baldly that local counsel to assist him in their selection "would surely have made a difference in the outcome of the litigation." Counsel for the appellant engaged extensively in the examination of prospective jurors on the *voir dire* and made no objection to the jury as finally selected and empanelled.[2] We feel that the jury which tried the appellant was composed of competent jurors who exercised their judgment with perfect freedom from improper influences. See *Wilson v. State,* 4 Md. App. 192. Therefore, we cannot conclude that the appellant was not afforded effective representation in its selection, that he was prejudiced thereby, or that his constitutional rights with respect thereto were in any way denied.

After his arrest the appellant gave the police a statement, through an interpreter, which was reduced to writing. A photostatic copy of the statement was given to defense counsel in advance of trial. The State did not offer the statement at the trial but as part of his case the appellant elicited testimony that a statement had been made to the police and offered it in evidence. Objection to its admission was sustained.[3] The appellant contends that the refusal of the lower court to admit the statement was prejudicial error.

Hearsay evidence is defined as "testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." *Frey v. State,* 3 Md. App. 38, 48, quoting McCormick, *Evidence* (1 Ed. 1954) § 225, p. 460. The statement given by the appellant clearly constituted hearsay evidence, and, unless it was admissible under one of the exceptions to the hearsay rule, it was properly excluded by the trial court.

---

**2.** It appears that counsel for the appellant examined at length approximately 30 prospective jurors on the *voir dire* and challenged about 17.

**3.** However, the lower court permitted, over objection by the State, testimony as to the substance of the statement.

The appellant urges that the statement comes under the *res gestae* exception to the hearsay rule. The test as to whether a declaration or act offered in evidence is part of the *res gestae* is whether it was contemporaneous with the commission of the crime and so connected with it as to illustrate its character. *Wilson v. State,* 181 Md. 1; *Van v. State,* 1 Md. App. 347. We said in *Reckard v. State,* 2 Md. App. 312, 317:

> "The point is not so much the lapse of time or change of place as the continuance of a situation which insures that what is said is, in fact, a spontaneous reaction to the occurrence, rather than an independent, preconceived action of the speaker's will."

In the instant case the appellant hid in the brush for some two hours after the commission of the crime and after he was arrested the statement was not given until a police officer with knowledge of Spanish was brought from Baltimore. We feel that the statement was not a "spontaneous reaction" to the occurrence of the crime and was not part of the *res gestae*.

The appellant next alleges that the statement contained exculpatory as well as inculpatory admissions and therefore was an admission as distinguished from a confession or at least in part a confession and in part an admission.[4] He cites *Gray v.*

---

4. The police asked the appellant to tell in his own words what happened. The account of the appellant, as it appeared in the statement was:

> "Yes, I have been lost for seven days and I asked the taxi driver in Baltimore to take me to Chestertown. He said it would cost $40.00. We left Baltimore and I had only $5.77 in my pockets. I paid the dollar at the Chesapeake Bay Bridge Toll gate. When we got somewhere nearby, the driver asked me for the money. I told him I did not have the money, however, if he would take me to my brothers, he would be paid. The taxi driver then wanted to put me out of the taxi. I did not want to be left there, because I would be lost again. We became involved in an altercation and the driver struck me on the head with a bottle. I then stabbed him in his side and he took the knife from me and then ran away."

He denied taking any money from the cab driver. When the driver was brought to the Kent-Queen Anne County General Hospital

*State,* 181 Md. 439 as authority that a written confession is in fact the best evidence of what it contained and *Williams v. State,* 205 Md. 470 as authority that all of a statement, a part of which constitutes an admission, is admissible in evidence, the exculpatory as well as the inculpatory. But we think it immaterial here whether the statement of the appellant be considered a confession or an admission for the question is not whether the statement was admissible *against* the appellant on proffer by the State but whether it was admissible *for* the appellant on proffer by him. In both *Gray* and *Williams* the admissibility of the statement was within the frame of reference of a proffer by the State. We think it clear that a statement of an accused, be it a confession or admission, inculpatory or exculpatory, freely and voluntarily made under the procedural safeguards of *Miranda v. Arizona,* 384 U. S. 436, when that case is applicable, is proper evidence on introduction by the prosecution and is not rendered inadmissible by reason of the hearsay rule. It was said in *Maurice v. Worden,* 54 Md. 233, 257:

> "The admissions of a party, freely and voluntarily made, are always evidence, *which may be introduced by the opposite party."* (emphasis added).

In IV Wigmore, *Evidence* (3rd Ed.), § 1048, the rule is stated: "The statements made out of court by a party-opponent are universally deemed admissible when offered against him." And in McCormick, *Handbook of the Law of Evidence* (1954), § 239, p. 502, it is said, "Admissions are the words or acts of a party-opponent * * * offered as evidence against him." See Hochheimer, *Criminal Law* (1st Ed.), §§ 281-283. Wigmore states the justification for the rule in § 1048:

> "But if it is Smith himself who said out of court, 'I borrowed this fifty dollars', certainly Smith cannot

---

shortly after the incident he was bleeding from wounds in his right chest and right arm. The chest wound was about 4 inches from the heart. He was in shock when admitted to the hospital and the treating physician testified that "if he had continued active, I believe this would have aggravated the bleeding within the chest cavity and this again would have contributed to the shock and potential death of the patient."

complain of lack of opportunity to cross-examine himself before his assertion is admitted against him. Such a request would be absurd. Hence the objection of the Hearsay rule falls away, because the very basis of the rule is lacking, viz. the need and prudence of affording an opportunity of cross-examination * * * The Hearsay rule, therefore, is not a ground of objection when an apponent's assertions are offered *against* him; in such case, his assertions are termed Admissions. But the Hearsay rule is a ground of objections by the first party when the opponent's assertions are offered *in his favor;* and such statements are then not termed 'admissions' ". (emphasis added).

It is this reasoning as to the opportunity of cross-examination that answers the appellant's argument that if the statement were admissible when offered by the prosecution it should be admissible when offered by him. While a defendant cannot be compelled to testify he cannot preclude the State from its right to cross-examine him with respect to statements made by him not offered by the State by offering the statements by the testimony of a third party or by the written document. Nor does the allegation, as made by the appellant, that the State may not complain that it did not have the opportunity to cross-examine the appellant because the police could have done so when it obtained the statement, justify its admission. We think it inherent in the right of cross-examination, in this context, that it be conducted at a judicial proceeding with the one examined under oath.[5] It may have been better for the lower court to have admitted the written statement once it had admitted oral testimony, as part of the appellant's case, as to "any conversation" with the appellant, which testimony gave the substance of the

---

5. The exception to the requirement that a defendant has the right to be confronted by the witnesses against him is in accord with this rationale. The exception arises when a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. *Barber v. Page*, 389 U. S. 910; *Lindsay v. State*, 2 Md. App. 330; *Britton v. State*, 2 Md. App. 285.

statement.[6] But it does not appear that the appellant at that time again proffered the written statement. We note also that the appellant testified, through an interpreter, in his own behalf. He identified the signature on the written statement as his signature. His testimony with regard to the crime was substantially the same as appeared in the written statement—that he did not have the money to pay the cab fare, that the driver accused him of taking $32, an argument ensued, the driver hit him on the head with a bottle and "I went for my knife and I cut him"—and, on further examination by his counsel, went into much greater detail concerning the incident than appeared in the written statement. We find no error in the refusal of the lower court to admit the written statement when it was proffered and no prejudice to the appellant, requiring reversal, in its exclusion.

*Judgment affirmed.*

---

**6.** The testimony of the witness as to what the appellant said with regard to the altercation and stabbing was verbatim with the statement. The appellant was allowed to examine the witness as an adverse witness.