498 A.2d 666

**Gary Michael MUIR**

v.

**STATE of Maryland.**

**No. 124, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Oct. 8, 1985.

650

Jonathan Scott Smith, Assigned Public Defender, Ellicott City (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Arthur A. Marshall, Jr., State's Atty. for Prince George's County and William Shockley, Asst. State's Atty. for Prince George's County, Upper Marlboro, on brief), for appellee.

Argued before GILBERT, C.J., and WEANT and GARRITY, JJ.

GILBERT, C.J.

"Ambiguity in statutes may not be the parent of litigation, but it is certainly a kissing cousin." [1]

The late Judge John P. Moore, writing for this Court in *Calhoun v. State,* 46 Md.App. 478, 418 A.2d 1241 (1980), *aff'd,* 290 Md. 1, 425 A.2d 1361 (1981), characterized the "draftsmanship" of Md.Ann.Code art. 27, § 643B(c) as "patently inartful." "Any change," he wrote, "must be left to the legislature." *Calhoun,* 46 Md.App. at 490, 418 A.2d at 1249, *aff'd* 290 Md. 1, 425 A.2d 1361. That body heeded Judge Moore's implicit invitation, but it, nevertheless, failed to clarify completely § 643B(c). As a result, we are again called upon to clear away some of the mist surrounding that statute.

Before discussing the statute and the other issues raised in this appeal, we shall recount briefly the scenario out of which this matter arose.

## The facts

The testimony reveals that Gary Michael Muir, without permission, entered the dwelling of another during the hours between midnight and sunrise. He apparently made

---

1. Attributed to Jim Oigan. *See Mercantile-Safe Deposit and Trust Co. v. Hearn,* 62 Md.App. 39, 488 A.2d 202 (1985).

his way to the bedroom of a young woman where he forcibly endeavored to have her perform fellatio upon his person. While he twisted her neck, gripped her mouth, and ordered her to obey his command or have her neck broken, she called out to her brother for assistance. The brother, asleep in the adjoining room, awakened and rushed to his sister's aid. He carried a bar from a weightlifting set, and he struck the intruder with it. A struggle ensued and as a result, the brother was hit on the chin with the bar. To close the laceration that occurred from that striking required "10 to 11" sutures. During the struggle between her brother and the intruder, the female victim ran up the stairs to the next floor where she awakened other members of the family. They quickly joined the fray and subdued Muir. He was held by the family until the police arrived and took custody of him.

Muir contended that he entered the house by mistake and that he believed, at the time, that the female victim was his wife.

A jury in the Circuit Court for Prince George's County patently disbelieved Muir and convicted him of a multitude of charges, *scilicet:* attempted first degree sexual offense; attempted second degree sexual offense; assault and battery on the female victim; burglary; assault with intent to disable; assault with intent to prevent lawful apprehension; assault and battery on the female victim's brother.

Muir was sentenced to life imprisonment on the first degree sexual offense. He also further received a series of concurrent sentences ranging from twenty to ten years.

In this Court he posits that:

1. The evidence was insufficient to prove common law burglary.

2. The evidence was insufficient to support a conviction of assault with intent to disable.

3. It was error to disallow as evidence Muir's out-of-court statement concerning his entering the wrong house.

4. Consideration at sentencing of Muir's court martial conviction for robbery was error because at the time of the robbery Muir was seventeen years of age and, under Maryland law, would have been under the exclusive jurisdiction of the juvenile court.

5. The trial judge erroneously concluded that he was statutorily required, in light of Muir's prior record, to impose upon Muir a life sentence, without the possibility of parole.

*Sufficiency of evidence of breaking and entering in the nighttime*

With regard to the burglary conviction, Muir asserts that the evidence was insufficient to show that the "breaking" into the victim's home occurred in "nighttime."

■ Common law burglary is the breaking and entering of the dwelling of another, during the nighttime, with the intent to commit a felony therein. R. Gilbert & C. Moylan, *Maryland Criminal Law: Practice and Procedure* § 11.0 (1983); *Benton v. State,* 8 Md.App. 388, 260 A.2d 86 (1969). In the context of burglary, "nighttime" is not rigidly defined.

"[I]f there be daylight or crepusculum enough, begun or left, to discern a man's face withal, it is no burglary. But this does not extend to moonlight."

4 W. Blackstone, Commentaries *224; *Wiggins v. State,* 4 Md.App. 95, 109–110 n. 9, 241 A.2d 424, 432 n. 9 (1968), *cert. denied,* 251 Md. 753 (1968). In sum, before an accused may be convicted of burglary, it must be shown that there was too little natural light to discern the countenance of a man or woman. Existence as to artificial light has no import. *Wiggins,* 4 Md.App. at 109 n. 9, 241 A.2d at 432 n. 9, *cert. denied,* 251 Md. 753.

■ Both the female victim and her brother testified that it was dark outside at the time of the incident. The testimony of the female victim was that "there was some light from the street light outside ... I couldn't see ... I

couldn't see features or anything ... I just saw his body standing there." Her testimony was essentially uncontroverted, except for that of her younger brother who at the time of the incident was outside assembling newspapers for his route. When asked whether it was light or dark at the time of the occurrence, the young man stated that when he was summoned to the aid of his sister, it was getting lighter but that it was not quite daybreak. The witness did not, and probably could not, testify as to the degree of illumination at the time of the actual break-in of the dwelling.

The jury was free to accept that evidence which it believed and reject that which it did not. It was not required to believe the female victim's younger brother, or it could have believed him but decided that at the time of the breaking and entering it was not daylight. On the other hand, it could, and obviously did, accept the testimony of the female victim that when she awoke and found Muir in her bedroom, it was dark outside. That testimony in and of itself is sufficient to sustain the charge.

### Sufficiency of evidence of assault with intent to disable

■ Muir next asserts that the evidence was insufficient to convict him of assault with intent to disable. That issue has not, however, been preserved for our review. Md.Rule 4–324(a). *Lyles v. State,* 63 Md.App. 376, 492 A.2d 959 (1985).

Rule 4–324(a) provides that a defendant may move for judgment of acquittal on one or more counts at the close of the evidence offered by the State, or in a jury trial at the close of all of the evidence. Unlike former Rule 756 a, the current Rule 4–324(a) provides that when a motion for judgment of acquittal is made, the defendant "shall state with particularity all reasons why the motion should be granted." This requirement is relatively new to Maryland practice. That it is new does not excuse noncompliance. The rules of procedure promulgated by the Court of Appeals are "precise rubrics ... to be read and followed."

*Brown v. Fraley,* 222 Md. 480, 483, 161 A.2d 128, 130 (1960); *see also Colonial Carpets, Inc. v. Carpet Fair, Inc.,* 36 Md.App. 583, 374 A.2d 419 (1977).

At the close of the evidence, Muir's counsel said:

"[W]e would ... renew the motion for judgment of acquittal pursuant to Md.Rule 4–324 generally as to all counts, but paying specific attention to Count 6 ... which is burglary."

The previous motion that counsel sought to "renew" was, except for the word "renew," a "carbon copy" of the renewal. Neither motion, the original or the renewal, stated with "particularity all the reasons why the motions" should have been granted. Neither motion satisfies Rule 4–324.

*Declaration against penal interest*

■ At trial Muir proffered a statement he had made to a police officer following arrest. The transcript reads:

"[Muir] made an oral statement to Private Daniel P. Murphy. The defendant said he had been out drinking with a relative at a club in Riverdale. He said he didn't know the name of the club. He said he had been drinking beer and whiskey. He said he had mistakenly entered the victim's house and had been arrested by the police officer after being confronted by the family members. He said he had no recollection of how he entered the victim's house. He said he had no recollection of his activities prior to his arrest. The defendant said he remembered arriving home (referring to the victim's house), and that he had entered his bedroom (referring to the victim's bedroom). He said he asked the victim, who he believed to be his wife, to perform fellatio on him. When some inconsistencies in his story were pointed out to him, the defendant said he would not make any further statements and he demanded an attorney. The interview was then terminated."

The trial judge refused to permit the proffered statement into evidence. Muir now argues that the judge's denial of the proffer was error. We have an entirely different point of view.

As a general rule when a person makes an out-of-court declaration which is against his or her penal interest, that declaration, even though hearsay, is admissible into evidence as an exception to the hearsay rule if the person is unavailable for trial. *Jacobs v. State,* 45 Md.App. 634, 415 A.2d 590 (1980), *cert. denied,* 288 Md. 737 (1980). Muir's statement to Officer Murphy is not a declaration against Muir's penal interest. It, therefore, is not admissible under that exception to the hearsay rule.

A declaration against interest is an out-of-court statement of facts which are against the declarant's pecuniary, proprietary or penal interest. *McCormick on Evidence,* § 276 (3d ed. 1984). Statements made by a party which are offered by him or her in his or her favor do not fit within the exception. Muir's statement to Officer Murphy, however, may be characterized as an "admission" against interest. Admissions are out-of-court statements made by a party-opponent.[2] *IV Wigmore on Evidence* § 1048 (Chadbourn rev. 1972).

An admission, whether in a civil or criminal case, may be admitted into evidence at trial when offered *against* the declarant. The same statement, however, is not admissible if it is offered *for* the declarant. *Quiles v. State,* 4 Md.App. 354, 243 A.2d 661, *cert. denied,* 251 Md. 751 (1968). Such statements are inherently suspect as being self-serving.

That the maker of the statement "admits" to a lesser offense in order to avoid a greater one serves patently only

---

2. Many admissions may contain matters against the interest of the maker. *Ergo,* some courts have been misled into accepting them under the hearsay exception: declarations against interest. *See* IV Wigmore on Evidence § 1049 (Chadbourn rev. 1972).

the interest of the maker. Thus, one who breaks and enters the storehouse of another may admit to the attempt to steal goods having a value of less than $300 rather than face a charge of attempting to steal goods of a value of over $300. The maximum penalty for the former is imprisonment for eighteen months, but for the latter it is fifteen years. An "admission" under those circumstances would be highly motivated and suspiciously self-serving. It is for that reason that Muir's "admission" was not allowed into evidence.

This Court held in *Quiles v. State*, 4 Md.App. 354, 243 A.2d 661, *cert. denied*, 251 Md. 751, that a trial judge may properly exclude statements made by a defendant to the police if they are proffered at trial by the defendant. We said:

"While a defendant cannot be compelled to testify, he cannot preclude the State from its right to cross-examine him with respect to statements made by him, not offered by the State, by offering the statements ... [through the] testimony of ... a third party or by ... written document."

*Quiles*, 4 Md.App. at 361, 243 A.2d at 665, *cert. denied*, 251 Md. 751.

The long and the short of it is that Muir's statement is a self-serving declaration calculated to minimize his culpability. He sought to do exactly what *Quiles* states cannot be done. *Quiles* is dispositive of Muir's argument.

### Mandatory sentencing

Muir's remaining two contentions involve the provisions of Maryland's mandatory sentencing law. Md.Ann.Code art. 27, § 643B. Section 643B(c) provides:

"Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of

violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11."

Muir avers that the sentencing judge erred in two respects with regard to interpreting § 643B(c):

1) the judge considered a court martial conviction sustained when Muir was but seventeen years of age; and

2) the judge construed § 643B(c) as mandating the imposition of the *maximum* penalty allowed by law.

### *The court martial conviction*

■ In 1969 when Muir was seventeen years of age, he enlisted in the United States Army. Not long thereafter he was convicted by a court martial of two counts of robbery and one of attempted robbery. Apparently, Muir, in addition to a dishonorable discharge, was sentenced to three years confinement in a United States Disciplinary Barracks.

Muir maintains that the robbery convictions should not be considered in determining whether to apply Md.Ann.Code art. 27, § 643B(c). He so asserts because had he in 1969 committed the same offenses in Maryland, he would have been treated as a juvenile and not as an adult. Robbery with a deadly weapon by a juvenile in 1969 was an offense over which a juvenile court had exclusive jurisdiction. Md. Ann.Code art. 26, § 70–2(a)(1) (1957 Cum.Supp.1969). The offense, by a juvenile, was not placed outside the ambit of a juvenile court's jurisdiction until the enactment of 1972 Md.Laws, ch. 514. Although the record in the instant case relative to the court martial convictions contains references to the use of a knife during the course of the robberies on the military post, then Article 122 of the Uniform Code of Military Justice did not distinguish between robbery and robbery with a dangerous and deadly weapon.[3]

---

**3.** Article 122 of the Uniform Code of Military Justice provided:

To counter Muir's argument, the State pointed out that other jurisdictions which have considered the issue, notably New York and Alaska, have rejected similar contentions to those made by Muir. The Court of Appeals of Alaska in *McManners v. State*, 650 P.2d 414 (Alaska App.1982), held that a defendant's prior felony conviction in Missouri could be counted in Alaska, despite the fact that at the time of the commission of the crime in Missouri the defendant was seventeen years of age and would have been treated as a juvenile under Alaska law. The Alaska court reasoned that because the defendant was a resident of Missouri at the time of the conviction, "[h]e knew, or should have known, that Missouri considered him an adult subject to adult penalties if he violated the law." *McManners*, 650 P.2d at 416. Additionally, the court noted that because McManners was an adult at the time of his Alaska conviction, he knew, or should have known, that his prior history was relevant for sentencing purposes. *McManners*, 650 P.2d at 416.

More recently, the Supreme Court, Appellate Division Second Department of the State of New York, *People v. Hamilton*, 481 N.Y.S.2d 116, 117, 104 A.D.2d 1048, 1049 (1984), said:

> "[W]here youthful offender treatment was not accorded in a foreign jurisdiction, the fact that defendant would have been eligible for youthful offender treatment had the offense been committed in New York does not preclude the use of such convictions in this State as a predicate felony...."

*See also People v. Treadwell*, 80 A.D.2d 697, 436 N.Y.S.2d

---

"Any person subject to this code who with intent to steal takes anything of value from the person or in the presence of another, against his will, by means of force or violence or fear of immediate or future injury to his person or property or to the person or property of a relative or member of his family or of anyone in his company at the time of the robbery, is guilty of robbery and shall be punished as a court martial may direct." *See* 10 U.S.C. § 922 (1956).

457 (1981); *People v. Sibila,*[4] 81 Misc.2d 1028, 367 N.Y.S.2d 193 (1975), *aff'd,* 53 A.D.2d 809, 385 N.Y.S.2d 694 (1975).

We are persuaded by the reasoning of our sister States. When Muir committed the robberies in Georgia, he was subject to adult punishment; he was for purposes of the military an adult, and he knew or should have known of the consequences of his actions. Had Muir committed the robberies as a civilian in Maryland, he would have been charged as a juvenile. But the fact remains that he did not commit those crimes in this State. He was at the time of the commission of the crimes a member of the armed forces, subject to military control, and, most importantly, subject to adult treatment. Moreover, as in *McManners,* Muir was an adult when he committed the crimes in the case at bar, and he knew, or should have known, that his prior record was relevant for the purpose of sentencing. In our view the court martial convictions were properly counted in determining the application *vel non* of § 643B(c).

Before leaving that subject, we must address briefly an additional issue raised by Muir. He asserts that his constitutional right to equal protection of the law was violated when the circuit court judge considered the court martial conviction as a prior offense. Muir's argument again is grounded on the fact that in 1969 Maryland would not have tried Muir as an adult had he committed the crimes in this State. The posing to us of the question of equal protection appears to have been generated by a footnote in *McManners* that "the equal protection of the law under the state and federal constitutions" was not there raised. *McManners,* 650 P.2d at 416 n. 3. It matters not, however, whether the equal protection argument was inspired by *McManners* or by some other source, because it was not raised and decided in the trial court. Hence, it is not before

---

**4.** Interestingly, *Sibila* involved a Maryland conviction for escape. The defendant was at that time eighteen and one-half years old. Had the escape occurred in New York, Sibila could, in the discretion of the court, have been treated as a "youthful offender."

us, and, as in *McManners*, we decline to consider it. Md. Rule 1085.

### The sentence

██ Md.Ann.Code art. 27, § 643B(c) commands that a trial judge impose "the term allowed by law, but, in any event, not less than 25 years" upon a person, who is thrice convicted of a crime of violence, provided that the person has previously served a sentence in a correctional institution for a prior crime of violence. At the time of sentencing in the matter *sub judice*, the State urged and the trial judge agreed that the statute required that Muir be sentenced to life imprisonment without the possibility of parole.

In this Court, Muir asseverates that the phrase, "the term allowed by law, but, in any event, not less than twenty-five years" means simply that the sentence be at least twenty-five years. Conversely, the State posits that the phraseology of the statute mandates that a sentencing judge impose the maximum term of incarceration allowed by law, but, in any event, at least a term of twenty-five years.

"Of course in construing a statute we must observe its plain meaning and the 'natural import of its language' ...." *Calhoun v. State*, 46 Md.App. 478, 488, 418 A.2d 1241, 1248 (1980), *aff'd*, 290 Md. 1, 425 A.2d 1361 (1981), *quoting from State v. Fabritz*, 276 Md. 416, 421, 348 A.2d 275 (1975), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976). When determining the "plain meaning" of a penal statute, we must apply the ancient and oft repeated rule that "in resolving a dispute over the severity of the penalty, a presumption arises in favor of the lesser penalty over the greater one." *Calhoun*, 46 Md.App. at 488, 418 A.2d at 1248 (1980), *aff'd* 290 Md. 1, 425 A.2d 1361 (1981); *Wright v. State*, 24 Md.App. 309, 319–20, 330 A.2d 482, 488 (1975).

We think the trial judge judicially amended § 643B(c) by mentally inserting the word "maximum" between the article "the" and the noun "term." In so doing he effectively

rewrote the statute—a function that is constitutionally reserved to the legislature.

First degree sexual offenses are punishable by imprisonment "for no more than the period of his natural life." Md.Ann.Code art. 27, § 464(b). While that section unambiguously prescribes a maximum penalty, it clearly does not require the imposition of a specific minimum punishment. It is possible, therefore, that a sentencing judge could, under § 464(b), impose an absolute minimum sentence and even suspend that. In any event, the point we stress is that § 464 contains no prescribed minimum sentence. It is precisely that type of statute that § 643B(c) was designed to meet. When § 643B(c) is applicable, the sentencing judge must impose a sentence of at least twenty-five years imprisonment, without the possibility of parole, and the judge may not suspend any portion of the term. Section 643B(c) prescribes a legislatively mandated *minimum* sentence.

We illustrate what the legislature intended § 643B(c) to accomplish. If an accused is convicted of robbery, the maximum penalty under the statute is ten years imprisonment. Md.Ann.Code art. 27, § 486. Without the enactment of § 643B(c), any subsequent conviction could result, at most, in a ten year sentence. Section 643B(c), when applicable, would, assuming compliance with the prior incarceration provision, dictate a sentence of twenty-five years, not merely ten years. Section 643B(c) enhances the punishment meted to habitual or repeat offenders.

Although § 643B(c) does not require the imposition of a sentence of life imprisonment, it most certainly does not forbid such a sentence. If the trial judge believes that sentence to be proper, he should impose it; but if he thinks that particular penalty is too severe, he is at liberty under the statute to hand down a lesser punishment, but not less than twenty-five years imprisonment without the possibility of parole. Because the judge was under the mistaken belief that he was required by law to sentence Muir to life imprisonment without the possibility of parole, we shall

vacate that sentence and remand the matter to the circuit court for resentencing.

JUDGMENTS AS TO ALL COUNTS EXCEPT COUNT 2, AFFIRMED. CONVICTION ON COUNT 2 AFFIRMED, SENTENCE VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR THE IMPOSITION OF SENTENCE IN ACCORDANCE WITH THIS OPINION. NINE–TENTHS OF THE COSTS TO BE PAID BY APPELANT. ONE–TENTH OF THE COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.