# ROY WILLARD POWELL v. STATE OF MARYLAND

[No. 241, September Term, 1974.]

*Decided December 17, 1974.*

The cause was argued before ORTH, C. J., and MOYLAN and MENCHINE, JJ.

*Edward J. Petrick, Assigned Public Defender,* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Martin M. Mrozinski, Assistant Attorney General, Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Stephen Sacks, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## CASE SUMMARY

The first count of an indictment filed in the Criminal Court of Baltimore on 19 March 1973 against ROY WILLARD POWELL presented that on 3 March 1973 he ". . . feloniously, wilfully and of deliberately premeditated malice aforethought did murder one Hattie C. Thurman. . . ." [1] Code, Art. 27, § 616. The indictment came on for trial before a jury on 18 October 1973. At the close of all the evidence the court granted a motion for judgment of acquittal as to murder in the first degree. Code, Art. 27, § 593; Maryland Rule 755 b. The case, therefore, as to the major offense, went to the jury for them to decide whether Powell was guilty of the homicide, and if he was, whether the killing was murder in the second degree or manslaughter. *Wood v. State,* 191 Md. 658, 666-668; *Gray v. State,* 6 Md. App. 677, 684; *McFadden v. State,* 1 Md. App. 511, 516. See *Epperson v. State,* 7 Md. App. 464, 473. A verdict of murder in the second degree was announced on 19 October 1973 by the Forelady and confirmed by unanimous concurrence upon poll. Rule 758, §§ a and d. The

---

1. The second and third counts of the three court indictment charged related crimes against the person of Hattie C. Thurman—assault with intent to murder and assault and battery, respectively. The court in instructing the jury told them they were only concerned with the first count. When arraigned immediately before the trial Powell pleaded not guilty to all the counts. No affirmative disposition of the second and third counts seems to have been made, but in any event, the express finding of guilty under the first count, and silence as to the remaining counts, had the effect of a verdict of not guilty as to the remaining counts. *Williams v. State,* 9 Md. App. 447, 448-449, n. 1.

verdict was harkened. The imposition of sentence was deferred pending the determination of a motion for a new trial. The motion was heard and denied. On 11 December, after receipt of a presentence investigative report, Powell was sentenced to 30 years accounting from the date of the offense. He appealed.

## FACTS

Powell does not protest the legality of the evidence which the jury found sufficient to prove the *corpus delicti* of murder in the second degree and his criminal agency. He questions, not the fact of his guilt, but the circumstances surrounding its determination. Therefore, there is no need to dwell on the sordid details of the murder.[2] We give such factual posture of his prosecution as is necessary to resolve the two contentions he advances.

## ISSUE ONE

"The appellant was denied due process of law by the actions of the State and trial court forcing appellant to abandon *either* his motion for a speedy trial *or* his objection to the failure of the State to timely comply with his motion for discovery and inspection."

The first contention revolves around three motions filed

---

2. The autopsy report gave the manner of death as "Homicide — throat slashed during argument", and the cause of death as "Incised wound of neck." The opinion of the Assistant Medical Examiner was that "Hattie Thurman, a 38 year old, Negro female died of massive bleeding when her throat was slashed and large vessels cut. The manner of death is homicide." A photograph of the deceased taken at the Office of the Medical Examiner was received in evidence. It appeared that her throat, in layman's language, was cut from ear to ear. The wound was described in the autopsy report: "At a distance of 10″ from the top of the head in the anterior neck region, there is a deep incised wound which involves both the skin and underlying tissue. This wound measures 4″ in total length and $3/4″$ at its widest point in the approximate midline of the neck. The edges are clean and there is no bridging of the underlying tissue. Between the gaping edges of this wound is visible both external jugular veins which have been cut across and have bled profusely. The wound runs just beneath the thyroid notch and involves the right and left lobes of the thyroid gland, the strap muscles of the neck and the superficial vessels of the left side. This wound begins at the anterior border of the right sternocleidomastoid muscle and continues across the midline to the midpoint of the belly of the ipsolateral muscle. Gross bleeding has taken place from this wound, and the surrounding skin and clothing and soaked with blood. No hesitation marks are found in the area and the injury consists of a single incised wound."

by Powell, a motion for discovery and inspection, a motion to dismiss the indictment for failure to comply with the discovery request, and a motion for a speedy trial. The motion for discovery, requesting information usually sought by such means, was filed on 17 April 1973. On 19 April a supplemental motion for a copy of the autopsy and medical examiner's report was filed. The motion to dismiss the indictment and the motion for a speedy trial were filed on 5 October 1973. The motion to dismiss was predicated upon the failure of the State to comply with the discovery requests. It pointed out that trial had been set for 18 October and alleged that it was imperative that Powell "be in possession of the information asked for in the Discovery and Inspection Motion to properly prepare this case for trial." He explicitly objected "to a postponement by the State in order to gain more time to answer the Motion for Discovery" because he had also filed a motion for a speedy trial. The motion for a speedy trial simply read that Powell "hereby requests a speedy trial in the above captioned case."

On 17 October the State answered the motion for discovery, substantially giving, or agreeing to make available, the information requested, except for a copy of the autopsy report, which was not specifically mentioned. The autopsy report was shown to defense counsel the next day, several minutes before the case came on for trial. When the indictment was called for trial, the motions were heard on argument of counsel as preliminary matters.

Powell's argument on appeal is the same as his argument below. Defense counsel told the trial court:

"On ... April 16, 1973 the defendant filed with the State a motion for discovery and inspection pursuant to rule 728. On April 18th the defendant filed a supplemental motion for discovery and inspection, in that case asking for the autopsy report. As of the date of the motion, the motion was filed at least and mailed to the Clerk on the 4th of October, the defendant had not received the answers. In addition to that, as a courtesy prior to the filing of a motion, Your Honor, I sent a letter on August 15, 1973 to the State's Attorney's office

making reference to this file and indictment number as follows: 'Gentlemen, on April 16, 1973 I filed a discovery motion in this case which to this date has not been answered. Would you please do so immediately since this defendant has been languishing in jail sometime and I'd like to prepare the case and get him to trial. That was done at the instruction of the defendant in this case, whatever visit I made to him at the jail, has asked me the moment I walked in the door 'Is the State answering the motion for discovery?', upon which I answered in the negative. Pursuant to his request I filed a motion for a speedy trial on the motion to dismiss. The reason we did this is as follows. The remedies that have been held at the Court of Special Appeals and Court of Appeals with respect to the discovery motions, is that the remedy that lies therein is not dismissal, per se; but is a postponement or some time for the defense to orient itself and get a defense in the particular case. * * * To complete this I might point out that last afternoon I concluded another jury trial, a six-day jury trial in Part I. I was handed by the Assistant State's Attorney, Mr. Sacks, who is here today, for the first time the answer to discovery in this case. Less than twenty-four hours before this case was to begin. And that did not include the autopsy report. Now the autopsy report was just briefly shown to me for the first time five minutes ago before this case was to begin. Now there is a speedy trial motion in this case. The Chief Judge already refused the State's right to dismiss, to postpone this case, and for that reason we are asking to have this case dismissed and the reason is very simple. The State is putting us in a position to wait until the last minute to provide the defense with the information entitled under 728, less than twenty-four hours ahead of time, leaving the only remedy available under this as a postponement. Now I am not asking for a postponement."

The court said:

> "I am not disagreeing with you that it was improper
> for them not to give you the information you sought
> prior to the day before trial. You are luckier than
> some people. Some people don't get it until an hour
> before trial. You received it a day before. Where in
> fact have you been prejudiced by this information?"

Defense counsel replied:

> "Well Your Honor, I haven't had an opportunity to
> discover who the State's witnesses are going to be
> in this case at all. I found out for the first time late
> yesterday afternoon who the State intends to prove
> its case in chief with. I don't see the autopsy report
> which shows the manner of death until five
> minutes before trial. In effect what the State is
> doing, is forcing the defense into the position of a
> postponement which is precisely why the speedy
> trial motion was filed. In other words the State
> waits until the last minute in a case before it comes
> to trial when this case was set in many, many
> weeks ago."

The court asked if a postponement was requested. Defense
counsel made clear that he did not want a postponement:

> "I request a dismissal, because the State is forcing a
> postponement on the defense when there is a
> speedy trial motion here. I have no remedy. I don't
> want to postpone the case, I want to go ahead with
> the case. But the State waits until the last minute
> to provide me with the information. I have a
> Hobson's choice,[3] I'm in the middle. That's why the

---

[3]. The trope is not precisely apt. Powell says he could choose one of two.
As for Tobias or Thomas Hobson (c. 1544-1631):

"Where to elect there is but one.

'Tis Hobson's choice — take that or none."

Thomas Ward, *England's Reformation* (1630) ch. 4.

Steele wrote in the *Spectator*, no. 509:

"Mr. Tobias Hobson, from whom we have the expression ...

speedy trial motion and the motion to dismiss was filed. So the State effectively precluding the defendant from a speedy trial by filing their answers to the motions, and I point out to Your Honor this motion had been filed for months. As a courtesy before even thinking this additional motion to dismiss, I sent them a letter back in August, August the 15th and asked please, you know, to do it. They didn't do it. They wait until the day before trial and give me some of the answers, show me the autopsy record for the first time five minutes before I come to trial. And they put the defense in an impossible position. There's only one remedy to this, that is to dismiss this indictment against the defendant and dismiss the case. Now there's no other way we can proceed because effectively he is precluding the defendant to his right to a speedy trial. This defendant stood ready to come to trial today and stands ready to come to trial."

The court indicated that it was willing to refer the matter to the Chief Judge of the Supreme Bench for postponement. See Code, Art. 27, 591 (a). Defense counsel said: "I'm not asking for a postponement, I'm asking for a dismissal."

The judge ruled: "I'm denying the motion to dismiss

---

was a carrier ... the first in this Island who let out hackney-horses. He lived in Cambridge, and observing that the scholars rid hard, his manner was to keep a large stable of horses, with boots, bridles, and whips. ... When a man came for an horse, he was led into the stable, where there was great choice, but he obliged him to take the horse which stood next to the stable-door; so that every customer was alike well served according to his chance, and every horse ridden with the same justice. From whence it became a proverb, when what ought to be your election was forced upon you, to say Hobson's Choice."

See *Bartlett's Familiar Quotations* (14th ed.) 312 b.

Bergen Evans in the Dictionary of Quotations (1968) comments, 317:18,

"It is one of fame's whimsies that this obscure man should have had a street named after him in Cambridge, a number of the Spectator devoted to him, been the subject of two poems by Milton, and had his name become a proverb. Few kings have gained as much fame."

because of the failure to file the answers to discovery before they were filed yesterday, which is twenty-four hours before the case. I'm reserving my decision on the motion for a speedy trial at this time." See *Harris v. State,* 6 Md. App. 7, 16-19, *cert. denied,* 255 Md. 741. The motion for a speedy trial was denied at the close of all the evidence.[4]

## *DECISION — ISSUE ONE*

Powell makes an *ad hominem* argument. He demanded a speedy trial on 5 October 1973 and the trial commenced on 18 October. Although the court below "denied" the motion for a speedy trial, there was patently no delay of constitutional dimension between the demand and the trial, nor, as we understand it, does Powell claim that there was. In fact there was no unconstitutional delay from the institution of the prosecution to the time of trial. See *McIntyre v. State,* 17 Md. App. 526; *State v. Lawless,* 13 Md. App. 220. Powell obtained exactly what he sought in his speedy trial motion, a prompt trial. We see no merit in the argument that in order to obtain the prompt trial he had to relinquish a continuance to which he may have been entitled by failure of the State to make more timely answer to his motion for discovery. If he were not prepared for trial by reason of the State's delay in answering the discovery motion, a reasonable time to prepare his defense would not have changed his situation with respect to a speedy trial. There had been no denial of a speedy trial up to the time of the hearing on the motion. In the circumstances, there had simply not been such delay as violated the Sixth Amendment guarantee. Thus, if he had accepted a postponement or continuance of the case, there would have been no waiver of a right accrued to him and he would have suffered no prejudice thereby. We note that he did not seek

---

4. There was some question as to just when the motion for a speedy trial was denied. The trial concluded on 19 October. A docket entry under date of 26 October reads, "Motion for a Speedy Trial was in fact denied on 10/19/73." It was the view of the trial judge that the motion for a speedy trial was included in a general denial of all motions at the close of all the evidence.

dismissal of the indictment because he had been denied a speedy trial but asked only that he be tried promptly. In other words, he could not be harmed by the possible waiving of a right which had not been denied him in any event. And he could have had his trial at his convenience. The prosecutor asserted: "The State is willing to continue this case to any day next week, the week thereafter, any day Mr. Harlan [defense counsel] will agree to give him adequate time to prepare an appropriate defense in this case. We do not intend to let this case be postponed two or three months. We understand the defendant has been in jail since March the 3rd. I'm available at any time. I will assure him a Courtroom waiting to proceed at any time the defendant wants. If he wants tomorrow, Tuesday or Wednesday."

The fact is, however, that there is ample showing that Powell was not prejudiced by going to trial on 18 October. When the court announced that it was denying the motion to dismiss and holding the speedy trial motion *sub curia*, the State indicated some apprehension about the status of the matter upon attack under post conviction procedures. The transcript reads:

"MR. HARLAN [Defense Attorney]: I object.

THE COURT: Mr. Harlan hasn't said he is not prepared to try it.

MR. SACKS [Assistant State's Attorney]: He has implied he's not adequately prepared.

MR. HARLAN: That remark should be stricken from the record.

THE COURT: Mr. Harlan is a very able defense attorney. He was a State's Attorney for many years, and he was handed cases the last minute to try and done a perfect job. He never indicated to me he's not prepared to try the case, because he's probably, not with any help from the State's Attorney's office, but he's probably prepared in spite of the State's Attorney's office."

Defense counsel then examined Powell on the record. Powell

agreed that he and his attorney had "numerous discussions about this case." The examination continued:

"MR. HARLAN: Now you've heard the argument I made. Do you wish me to request a postponement or do you want to go to trial today.

MR. POWELL: I want to go to trial today.

MR. HARLAN: Do you feel confident in my representation of you, do you feel I have done enough work in your behalf so that we are properly prepared to go to trial today?

MR. POWELL: I do.

MR. HARLAN: If not I will request the Court for a postponement and I will do any further work you want.

MR. POWELL: I wish to go on with the trial.

MR. HARLAN: You understand if we made a request, the Court doesn't necessarily have to grant it, but the Court may well grant a continuance in this case; you understand that?

MR. POWELL: I don't understand this continuance.

THE COURT: In other words, a continuance — I'll postpone the case for another day.

MR. HARLAN: Do you understand that we can request that?

MR. POWELL: I understand.

MR. HARLAN: You want to postpone the case or go to trial today?

MR. POWELL: I want to go to trial today.

MR. HARLAN: Is there any area in which you figure that I or you are unprepared to go to trial today in this case?

MR. POWELL: No, I'm not."

The trial proceeded.

The main objective of Rule 728 is to assist the accused in preparing his defense and to protect him from suprise.

*Mayson v. State,* 238 Md. 283; *Brunson v. State,* 9 Md. App. 1. The Rule provides no sanctions for non-compliance. *Jackson v. State,* 8 Md. App. 260; *Clark v. State,* 6 Md. App. 91. We have indicated that the purpose of the Rule may be effected by the grant of a reasonable continuance when necessary. *Jones v. State,* 5 Md. App. 180. It seems that Powell is unhappy because the State was dilatory in responding to his motion for discovery and he would have the sanction be the dismissal of the charges against him. We in no sense condone the failure of the State to respond more promptly. But we observe that Powell did not seek an order of court prescribed by §§ a and b of Rule 728 to fix a time of compliance.

We have ruled that non-compliance with Rule 728 provides no sanction calling for the dismissal of an indictment and that we would not presume one. *Young v. State,* 15 Md. App. 707, 711. We said in *Jones v. State, supra,* at 189, where, as here, actual prejudice was neither spelled out nor suggested and we saw none from our examination of the record:

> "Justice is not the private preserve of the criminal defendant; it also serves the public. The *raison d'etre* of criminal justice is the determination by legal means of the guilt or innocence of one who, cloaked with the presumption of innocence, stands accused of an offense against the state as the representative of the public. In the circumstances here its ends would be subverted if we were to preclude this determination by construing Rule 728 as urged by the appellant."

We see no error compelling reversal in the denial of the motion for a speedy trial and the motion to dismiss the indictment.

### ISSUE TWO

"The trial court abused its discretion by refusing to declare a mistrial when the prosecuting attorney referred

prejudicially in his opening statement to the appellant's indictment by the Grand Jury."

## FACTS

In his opening statement to the jury the prosecutor distinguished between the civil and criminal processes because some of the jury had sat on a civil panel. He said:

> "In a criminal case the case is brought here by the method of an indictment. That indictment is not to be considered as evidence in this case. An indictment is produced by a Grand Jury. You sitting here are what is known as a petit jury. A Grand Jury has the function of hearing only one side of the case. The State brings forth evidence to twenty-three people and they vote by a majority and bring in an indictment, but it's not an adversary hearing. I want you to —"

At this point defense counsel objected and there was a bench conference. Defense counsel gave the reasons for his objection:

> "MR. HARLAN: I object to the State's Attorney making reference to how an indictment is returned. I do it for the following reasons. It leaves the impression with the jury that the Grand Jury whose body has already considered this case and by their weight of authority has felt that this man is in some way guilty. The reason I say this, this comes at a time one week after the Vice-President of the United States resigns as a result of a Grand Jury indictment. The Grand Jury news is in the newspapers and for the State to tell this jury twenty-three of them voted this man should be brought to trial is prejudicial."

He noted that another member of the Supreme Bench had recently granted a mistrial for that reason. The prosecutor replied:

> "I was cut off in the middle of my statement

because counsel felt it was prejudicial. The last thing I said, it's on the record, that that was not an adversary hearing. I believe the State's obligation is to explain to the jury how a case gets here. I will also explain to them the same thing that it's not an adversary hearing, this is the first time he's had a chance to defend himself and bring forth his side of the case, which is purely explanatory. I do not believe it's any implication from what the State's case is that he's been found guilty by the Grand Jury which has acted upon his case."

The trial judge did not think the remark was grounds for a mistrial. He said:

"I think it is permissible for the State's Attorney to say this, how it was brought before this Court, and as long as he tells that the Grand Jury proceeding is not an adversary hearing I will instruct them the fact that he is indicted is nothing more than the fact he is charged with something."

The prosecutor resumed his opening statement. He added with respect to the Grand Jury:

"Now ladies and gentlemen of the jury, as I was saying before I was interrupted by Mr. Harlan, an objection to my opening statement, this case comes to you by way of what is known as a Grand Jury. The Grand Jury is not an adversary proceeding. It only hears one side of the case. The only purpose is a bridge, more or less a screening process for cases. Now the case comes to here, the first time, in an adversary proceeding. This is the first time the defendant will have an opportunity to put forth his case in this matter. This is an adversary proceeding."

During the charge to the jury the judge explained:

"Now, we have referred to indictments in this case. You have heard about indictments in opening

remarks to you by counsel. An indictment that I hold up before you is merely a piece of paper. You have the right to take this piece of paper with you to the jury room. The indictment is not evidence. It is merely a formal manner of accusing a person of a crime in order to bring him to trial, and you must not consider the indictment as any evidence of guilt of the defendant or draw any inference of his guilt merely because he has been indicted."

Defense counsel had no objections to the jury charge.

### DECISION — ISSUE TWO

In the circumstances here, viewing the challenged remarks with the totality of the trial judge's charge to the jury, and, particularly, in the light of his explicit cautions regarding the indictment, we see no abuse of discretion in the refusal to grant a mistrial. *Johnson v. State,* 18 Md. App. 571, 574. *See Wilhelm and Cook v. State,* 272 Md. 404. *Compare Killie v. State,* 14 Md. App. 465; *Holbrook v. State,* 6 Md. App. 265.

Over a month after appellant's brief was filed, appellant sent this Court a letter protesting his innocence and setting forth allegations to support his "continuing redress for Justice." He cited and discussed additional authorities in arguing that the trial court erred in refusing to grant a mistrial. There is no provision in the Rules for the filing of an amended or supplemental brief. *Cleveland v. State,* 8 Md. App. 204, 223. We observe, however, that were his *pro se* document properly before us, and considered, the allegations and argument therein would not affect the conclusion we have reached.

*Judgment affirmed.*