518 A.2d 1081

**Paul Alexander RUSSELL**

v.

**STATE of Maryland.**

**Nos. 1294, Sept. Term, 1985, 273, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Jan. 7, 1987.

Richard A. Finci (Pickett, Houlon & Berman on brief), Hyattsville, for appellant.

John S. Bainbridge, Jr., Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Cathleen C. Brockmeyer, Asst. Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County, Sheila Footer and Benjamin S. Vaughan, Asst. State's Attys. for Montgomery County, Rockville, on brief), for appellee.

Argued before GARRITY, BLOOM and KARWACKI, JJ.

GARRITY, Judge.

The appellant, Paul Alexander Russell, who had been charged in a three-count indictment, was convicted on July 25, 1985, by a jury in the Circuit Court for Montgomery County (Latham, J. presiding) of possession of controlled dangerous substances and of possession of controlled paraphernalia. The jury was unable to reach a verdict as to the charge of possession with intent to distribute a controlled dangerous substance (marijuana). Upon retrial of that charge on January 17, 1986, however, he was convicted by a jury (Messitte, J. presiding). The appellant was resentenced, and at such time Count II (possession of a controlled dangerous substance) was merged with Count I (possession with intent to distribute). Upon consolidation for appeal, we are asked to review the following issues.

I. Whether the indictment was fatally defective as to Count III as it failed to allege the specific intent of the offense charged regarding the possession of controlled paraphernalia.

II. Whether the trial court committed reversible error by instructing the jury as to a different charge from that for which the appellant had been indicted in Count III (possession of controlled paraphernalia).

III. Whether the appellant was denied a fair and impartial trial as to Count I (possession with intent to distribute) because of "the State's numerous references to appellant's involvement in Jamaican drug trafficking."

IV. Whether the trial judge erred by failing to grant a mistrial as to Count I (possession with intent to distribute).

### *Facts*

In October, 1984, after receiving information from a confidential informant, the Montgomery County Police Department initiated an investigation of the appellant. The informant advised that the appellant was involved in illegal narcotics activity operating out of an apartment in Silver Spring. A surveillance team monitored the activity at the apartment for a number of days and obtained a search warrant. The search revealed a large quantity of marijuana in the rear bedroom and items of controlled paraphernalia in other areas of the apartment.[1]

Although we shall reverse the judgment of conviction as to Count III (possession of controlled paraphernalia), because of improper jury instructions on that charge, we shall discuss the issues *in seriatim.*

### I. *Indictment*

■ The appellant contends that Count III of the indictment failed to allege that he had possessed certain paraphernalia with the specific intent to use the items in connection with the illegal manufacture, distribution, or dispensing

---

1. These items included one box of aluminum foil, three boxes of zip-loc bags, a scale, a bong and a pouch containing baggies, tubes, tubing and pliers.

of a controlled dangerous substance. He argues that because Md.Ann.Code art. 27, § 287(d) requires that specific intent, the indictment is fatally defective. We disagree.

Count III of the indictment alleged that Paul Alexander Russell,

> on or about November 7, 1984, in Montgomery County, Maryland, unlawfully did possess certain controlled paraphernalia in violation of Article 27, Section 287(d) of the Annotated Code of Maryland ...

As this court stated in *Whitehead v. State*, 54 Md.App. 428, 458 A.2d 905, *cert. denied*, 296 Md. 655 (1983), "reference to the statute here was not a mere citation for the purposes of convenience." *Id.* at 444–45, 458 A.2d 905. Here, as in *Whitehead*, the specific charge was that the appellant had committed a proscribed act in violation of a particular statute, i.e., had possessed controlled paraphernalia in violation of article 27, § 287(d). We reaffirm our holding that "[t]he effect of charging in that manner was to incorporate by reference the elements of the statutory offense ... as though the section had been set forth in full ... in the indictment." *Id.* at 445, 458 A.2d 905. *See also Jones v. State*, 303 Md. 323, 493 A.2d 1062 (1985); *Williams v. State*, 302 Md. 787, 490 A.2d 1277 (1985).

## II. *Jury Instructions—Count III*

As previously discussed, the appellant was charged in Count III with possession of controlled paraphernalia under Md.Ann.Code art. 27, § 287(d). Part (ii) of this subsection, which applies to the evidence in the case *sub judice*, prohibits the possession of:

> Gelatin capsules, glassine envelopes or any other container suitable for the packaging of individual quantities of controlled dangerous substances in sufficient quantity to and *under circumstances which reasonably indicate an intention to use any such item for the illegal manufacture, distribution, or dispensing of any such controlled dangerous substances....* (emphasis added).

A review of the jury instructions with respect to Count III reveals, however, that the trial judge told the jury:

Controlled paraphernalia is defined under 287(a) as follows:[2] "As used in this section, the term 'drug paraphernalia' means all equipment, products and material of any kind which are used, *intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producting, processing, preparing, testing, analyzing, packaging, repackaging or storing."* (emphasis added). Several other items, ladies and gentlemen, that fall within that definition. Scales and balances used, intended for use or designed for use in weighing or measuring controlled dangerous substances falls within drug paraphernalia. Containers and other objects used, intended for use or designed for use in storing or concealing controlled dangerous substances is one of the definitions of drug paraphernalia, and lastly, bongs, which you have heard about, is also considered drug paraphernalia.

You must determine whether or not the material in questions was a controlled paraphernalia which has been designated by statute, and lastly, if you conclude that, *you must also consider whether Mr. Russell was in possession of that in accordance with the previous definition of possession which I earlier gave you.* Those are the matters that you must consider in deciding whether he is guilty or not guilty of the third count of the indictment. (emphasis added).

Defense counsel called to the court's attention that the paraphernalia definition used by the court applied to § 287A(a) rather than § 287(d), the section under which the appellant had been indicted. The trial judge, however, stated his belief that the instruction adequately covered § 287(d). As § 287A(a) and § 287(d) contain substantive differences with respect to the type of conduct proscribed and to the specific intent involved, however, we believe the instructions were erroneous.

---

2. Although the transcript reflects the section reference as 287(a), the trial judge read the language from art. 27, § 287A(a).

In addition to authorizing the imposition of a more severe penalty than contained in § 287A, the offense chargeable under § 287(d) defines specific conduct relating to a substantially different offense.[3] Indeed, contrary to the State's argument on appeal, the State Attorney General recognized crucial differences between the sections when analyzing the statute. *See* 66 Op.Att'y Gen. 125 (1981). In his opinion, the Attorney General observed:

Although § 287(d) and 287A define similar offenses, the two prohibitions nevertheless contain some important differences. First, § 287A is a much broader statute than 287(d): § 287A, unlike § 287(d), covers virtually every item of drug paraphernalia that can be used in connection with any of the many and diverse controlled dangerous substances. Second, § 287A contains a specialized definition of "drug paraphernalia"; § 287(d) does not. Third, § 287A, unlike § 287(d), incorporates a specific intent standard in two ways: it defines drug paraphernalia as any item "used, designed for use, or intended for use" with illegal drugs; and it defines the substantive offenses in terms of specific intent. Fourth, § 287A contains thirteen factors that may be considered by enforcing authorities in determining whether the requisite intent exists to make an item drug paraphernalia; § 287(d) contains but one factor.

\*　　\*　　\*　　\*　　\*　　\*

Because of these differences, §§ 287(d) and 287A are *not* identical statutes applicable to identical offenses. (emphasis added).

66 Op.Att'y Gen. at 127–28.

■ It is incumbent upon the court in a criminal case to instruct the jury on every point of law essential to the crime

---

**3.** A violation of § 287A is a misdemeanor penalizing first offenders by a fine of not more than $500, and for a second offense by a fine of not more than $3,000, imprisonment for not more than two years, or both. A violation of § 287(d) is a misdemeanor punishable by imprisonment for not more than four years, a fine of not more than $25,000, or both.

charged when requested to do so. *Hardison v. State*, 226 Md. 53, 60, 172 A.2d 407 (1960). It is evident that in the case at bar, contrary to defense counsel's request of the court to correct its instruction and advise the jury as to the elements of the crime charged, the court failed to do so. We must reverse the judgment of conviction as to Count III and grant a new trial as to that charge.

### III. *Reference to Jamaican Drug Trafficking*

The appellant contends that he was denied a fair and impartial retrial as to Count I because of the trial court's refusal to grant a mistrial when the State made "numerous references to his involvement in Jamaican drug trafficking."

It has been repeatedly held that a trial judge shall declare a mistrial only under extra-ordinary circumstances and where there is a manifest necessity to do so. *Cornish v. State*, 272 Md. 312, 317, 322 A.2d 880 (1974); *Sanders v. State*, 57 Md.App. 156, 174, 469 A.2d 476, *cert. denied*, 299 Md. 656, 474 A.2d 1345 (1984). Moreover, the trial court in making its determination should balance the potential prejudice to the defendant against whether the alleged improper statement could "sway a jury of reasonable intelligence and ordinary human experience." *Kellum v. State*, 223 Md. 80, 88, 162 A.2d 473 (1960). The denial of a motion for mistrial is reviewed on appeal only to determine whether there was an abuse of discretion. *Basiliko v. State*, 212 Md. 248, 260–61, 129 A.2d 375 (1957). Furthermore, the decision of the trial court and the exercise of that discretion will not be reversed on appeal unless there has been clear prejudice to the defendant. *Lusby v. State*, 217 Md. 191, 195, 141 A.2d 893 (1958), as cited in *Curry v. State*, 60 Md.App. 171, 180, 481 A.2d 812 (1984), *cert. denied*, 302 Md. 130, 486 A.2d 173 (1985).

Despite appellant's complaint that there were "numerous references" as to his involvement in Jamaican drug trafficking, the record reflects only two instances in which

the trafficking in drugs by Jamaicans was mentioned to the jury: in the prosecutor's opening statement and when Officer Kirk Holub testified as to his subspecialty as a narcotics officer. At no time, however, did Officer Holub specifically link the appellant with the phrase "Jamaican drug trafficking." Furthermore, although the State sought to qualify Officer Holub as a drug enforcement expert in the field of the Jamaican drug trade, the qualifying *voir dire* took place outside the presence of the jury. Indeed, the rationale of the trial court in refusing to recognize Officer Holub's expertise in the Jamaican drug trade as a specific "subspecialty" is most informative. The trial judge stated that he did not

> find that the mere reference to Jamaican drug trade is itself prejudicial, because, in fact, it is a real distinction that the Police Department makes. It you ask this man what is his specialty in the Police Department, his answer is, "I look at the Jamaican drug trade," and that is a fact. It is only when one comes to court and tries to say, "I have a special recognized expertise that should lead you, all other things being in doubt, to convict Jamaicans who have any connection with drugs because there is such a thing as Jamaican drug trade." At that I draw the line. It is not until that is done that there is any real problem.

Remarks of a prosecuting attorney "reasonably calculated to appeal to or evoke racial, national, or religious prejudice are universally condemned as violative of the right of one accused of a crime to a fair and impartial trial." 45 A.L.R.2d 303, 306 (1956) as cited in *Contee v. State,* 223 Md. 575, 583, 165 A.2d 889 (1960). We cannot say, however, that the statement at issue was calculated to appeal to or evoke national, racial, or religious prejudice among the jurors.[4]

---

**4.** Here there was no additional "aggravating" conduct by the prosecutor to warrant a mistrial. *See, e.g. State v. Filipov,* 118 Ariz. 319, 576 P.2d 507 (1978) (The use of the defendant's nickname "Gypsy" and impliedly comparing the defendant with Sicilianos was an improper

We concur with the trial court's observation in colloquy that the statement made by Officer Holub was a "totally disconnected" statement meant to go only to the fact that Officer Holub's line of work in the Police Department was to "look at the Jamaican drug trade." Without a calculated statement on the part of the State to evoke prejudice, we conclude that there were no extraordinary circumstances to warrant the declaration of a mistrial as to Count I (possession with intent to distribute narcotics).

IV. *Failure to Disclose Oral Statements of Appellant*

The appellant contends that, in violation of Rule 4–263(b)(2), the State on retrial of Count I used two statements made by him that it did not disclose would be used as evidence during the trial. In particular, the appellant complains that Sgt. John Straughan, the lead investigator, testified on cross-examination that the appellant requested the return of a set of keys which included a key to the front door of the apartment where the drugs had been seized. Additionally, the appellant complains that Officer Thomas Cauffiel testified that the appellant admitted that his "street" nickname was "Skelly."

Maryland Rule 4–263(b)(2) states:

(2) *Statements of the Defendant.*—As to all statements made by the defendant to a State agent that the State intends to use at a hearing or trial, furnish to the defendant, but not file unless the court so orders: (A) a copy of each written or recorded statement; and (B) the substance of each oral statement and a copy of all reports of each oral statement.

■ All statements made by a criminal defendant to a State agent which the State intends to use at trial are statements expressly within the scope of Md. Rule 4–263. *Jennings v. State*, 303 Md. 72, 77, 492 A.2d 295 (1985). The major purpose of Md. Rule 4–263 and its predecessors,

---

appeal to passion and prejudice mandating reversal since its cumulative effect linked the defendant to the "Mafia").

however, is to assist the defendant in preparing a defense and to afford protection from surprise. *Mayson v. State,* 238 Md. 283, 208 A.2d 599 (1965); *Powell v. State,* 23 Md.App. 666, 675–76, 329 A.2d 413 (1974).

■ When a potential discovery violation comes to life in the course of a trial, "whether any sanction is to be imposed and, if so, what it is to be, is in the first instance committed to the discretion of the trial judge." *Warrick v. State,* 302 Md. 162, 173, 486 A.2d 189 (1985).

> The exercise of that discretion includes evaluating whether a discovery violation has caused prejudice. When asked to grant a mistrial as a sanction for a discovery violation by the State which was revealed during trial a circuit judge would look to the record as a whole to determine whether the matter omitted from a formal discovery production by the State had nevertheless been timely communicated to *or known to the defense in some other* way.

*Id.* (emphasis added).

■ The transcript from the appellant's retrial as to Count I reveals that the first reference to the keys came, without objection, in the State's case-in-chief when Sgt. Straughan was asked how he obtained keys to a Toyota vehicle. Sgt. Straughan testified that he obtained the keys "from Mr. Russell," and that the "keys were given back to Mr. Russell" after he "asked me where they were." Moreover, examination of the transcript from the appellant's first trial reveals that defense counsel also made no objection to substantially the same testimony given by Sgt. Straughan regarding the keys.

With respect to the admission by the appellant that his nickname was "Skelly," such evidence was presented in the original trial. Indeed, defense counsel in the instant appeal acknowledged having received the transcript that contained the information. It is evident that the appellant had sufficient opportunity to prepare his defense regarding such evidence.

**566**

On our examination of the record, which also reflects a cautionary instruction given to the jury to disregard appellant's statement acknowledging ownership of the keys, we hold that the trial judge did not abuse his discretion in denying appellant's motion for a mistrial.

JUDGMENT AFFIRMED AS TO COUNTS I AND II; JUDGMENT REVERSED AS TO COUNT III AND REMANDED FOR NEW TRIAL AS TO THAT COUNT. COSTS TO BE EQUALLY DIVIDED.