528 A.2d 510

**Mark TIBBS**

**v.**

**STATE of Maryland.**

**No. 1618, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

July 16, 1987.

Certiorari Denied Dec. 9, 1987.

240

242

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kurt L. Schmoke, State's Atty., for Baltimore City and Ruth Finch, Asst. State's Atty., for Baltimore City, on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and BISHOP and POLLITT, JJ.

GILBERT, Chief Judge.

### Preface

But for the fact that the evidence against Mark Tibbs was overwhelming, despite the assistant State's attorney's efforts to snatch defeat from the jaws of victory, we would reverse this case and remand it for a new trial. Our review of the record, however, convinces us that the prosecutor's misdirected zeal did not deny Tibbs due process of law.

### The Facts

David Lester was murdered on Lexington Street in Baltimore City following an attempted robbery of his store. Two men were seen chasing Lester across the street. Shots were heard, and the men then ran West on Lexington Street. At some point they met up with their "lookout" man. The men ran into a high-rise apartment project on West Fayette Street, where they hid the murder weapon. After they had gained entry into an apartment, Tibbs admitted to the others that "he shot the man."

Shortly thereafter, the police arrived at the apartment, determining that the men fit the descriptions of the assailants. Tibbs and the others were arrested.[1]

Tibbs was charged with first degree murder, attempted robbery with a deadly weapon, conspiracy to rob, and

---

1. The others were Joseph R. Roscoe and Matthew T. Pointer.

certain handgun violations. He was tried by a jury in the Circuit Court for Baltimore City and found guilty of all charges.

After a motion for a new trial was denied, Tibbs was sentenced to life imprisonment plus additional˙consecutive terms totaling sixty years.

As the preface implies, the thrust of this appeal is the misconduct, *vel non,* of the assistant State's attorney. The transcript is replete with motions for mistrial based on allegations of prosecutorial misconduct. The trial judge continually admonished the prosecutor to cease attempts to introduce improper evidence. At one point in time the judge threatened to cite the assistant State's attorney for contempt if the court's guidelines were further ignored.

### The Issues

In this Court, Tibbs raises a pentad of reasons why he believes the judgments of the circuit court should be reversed.

We shall discuss each of Tibbs's five issues in the order in which he has posed them, adding whatever additional facts are necessary.

## I

"The trial court committed reversible error when it overruled appellant's objection to a State's witness'[s] testimony about the substance of a conversation with the appellant regarding appellant's consultation with his attorney?"

Over defense counsel's objection, James Roscoe, an accomplice, was permitted to testify to a conversation he had with Tibbs while the two were in the Baltimore City Jail. The record discloses:

[Assistant State's Attorney]: Mr. Roscoe, tell us, what other conversations you had at Baltimore City Jail with Mr. Tibbs?

[Defense Counsel]: Objection.

The Court: Relative to this offense, overruled.

The Witness: When he came back off of attorney visits—

[Defense Counsel]: I am going to object to this, Your Honor.

The Court: Overruled.

The Witness: *He came back off of attorney visits one day and told me that things was looking bad for him.* (Emphasis added.)

Tibbs argues that the admission of that testimony constitutes reversible error because the evidence was "irrelevant, immaterial, and hearsay."

The statement attributed to Tibbs is clearly hearsay. Since it is hearsay, is it, nevertheless, admissible as one of the diverse exceptions to the hearsay rule? There are only two exceptions, if any, into which the statement attributed to Tibbs fits: 1) a declaration against interest or 2) an admission.

This Court in *Muir v. State,* 64 Md.App. 648, 498 A.2d 666 (1983), *aff'd* 308 Md. 208, 517 A.2d 1105 (1986), commented:

"As a general rule when a person makes an out-of-court declaration which is against his or her penal interest, that declaration, even though hearsay, is admissible into evidence as an exception to the hearsay rule if the person is unavailable for trial."

■ The statement does not fall within the declaration against interest exception to the hearsay rule because that exception requires that the declarant be unavailable for cross-examination because of death, insanity, etc. *Muir v. State,* 64 Md.App. at 656, 498 A.2d 666. Patently, Tibbs was available at trial; hence, the exception is inapplicable.

"Admissions," the Court of Appeals said in *Aetna Casualty & Surety v. Kuhl,* 296 Md. 446, 463 A.2d 822 (1983), "are 'the words or acts of a party-opponent ... offered as evidence against him.' McCormick § 262, at 628. Admissions are considered to be substantive evidence of the facts admitted. *Smith v. Branscome,* 251 Md. 582, 248

A.2d 455 (1968); *Terry v. O'Neal,* 194 Md. 680, 72 A.2d 26 (1950); *Lambros v. Coolahan,* 185 Md. 463, 45 A.2d 96 (1945); *Kirk & Sons v. Garrett,* 84 Md. 383, 35 A. 1089 (1896); *Maurice v. Worden,* 54 Md. 233 (1880)."

The *Kuhl* Court further stated, "[A] party may offer into evidence against his opponent anything said by him as long as it illustrates some inconsistency with the facts now asserted by the opponent in pleading or testimony. Wigmore, § 1048."

■ The statement "He [Tibbs] came back off of [sic] attorney visits [sic] one day and told me that things was [sic] looking bad for him" is not an admission. It does not illustrate any inconsistency with facts asserted by the defendant. A reading of the statement reveals that Tibbs did no more than express his opinion of the strength of his case.

Tibbs's statement to Roscoe was hearsay. It was not within any exception to the rule; its admission was error. The error notwithstanding, it does not necessarily follow that the case must be reversed. *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976).

■ Tibbs avers that the judge should have been alerted by the witness's testimony relative to an "attorney visit." Proceeding from that premise, Tibbs concludes that the "alert" should have forewarned the judge that there was a "great possibility that improper evidence [would be] uttered." There is, as yet, no requirement that trial judges be clairvoyant. In our view, the words "attorney visit" are neither *per se* excludable nor should they have alerted the judge that the ensuing evidence would be inadmissible.

Furthermore, in the case at bar, the trial judge belatedly recognized the inadmissibility of the evidence, and he offered a curative instruction to that effect. Defense counsel, however, declined the offer.

■ Whatever prejudice, if any, that may have been caused the appellant by the improper evidence could have

been mitigated, if not eradicated, by the court's giving the jury a curative instruction. *Brooks v. State,* 68 Md.App. 604, 515 A.2d 225 (1986). That solution was shunned by Tibbs.

■ Although, as we have said, Tibbs's statement to Roscoe should not have been admitted into evidence, the error was harmless beyond a reasonable doubt in light of the otherwise overwhelming evidence of Tibbs's guilt.[2] Specifically, Joseph Roscoe, appellant's accomplice and co-conspirator, testified that appellant admitted shooting David Lester during the attempted robbery of the store. An eyewitness identified Tibbs and his cohorts as having been the persons observed fleeing the scene of the crime. That evidence corroborated Roscoe's testimony.[3]

Viewed as a whole, the properly admitted evidence in the case "so outweighs the prejudicial nature of the evidence erroneously admitted that that there is *no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded." Brooks v. State,* 299 Md. 146, 472 A.2d 981 (1984), quoting *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976) (emphasis added by *Brooks* ).

In light of the fact that the error in admitting the hearsay was harmless, there is no need to discuss its relevance or materiality.

## II

"The trial court erred in denying appellant's motion for mistrial when evidence regarding a conversation appellant had with his attorney was disclosed to the jury through the testimony of an accomplice."

---

**2.** Sufficiency of the evidence is not questioned in this appeal.

**3.** No issue of the corroboration of the accomplice's testimony is raised. We do not discuss it. We are not, however, to be understood as suggesting that that issue would have had merit.

After the "looking bad" testimony discussed in issue I came into evidence, the trial court, as we have said, offered to give the jury a curative instruction. Defense counsel declined the offer and moved for a mistrial. Counsel argued that his client was being denied effective assistance of counsel because the jury could infer that it was Tibbs's attorney who said things "looked bad"; and, hence, defense counsel would not be able to "stand up in front of this jury and tell the jury it doesn't look bad for [his] client."

Tibbs's statement to Roscoe was susceptible of more than one inference. Although it may have been *possible* for the jury to infer that the statement originated with Tibbs's attorney, the jury could also have inferred that the statement was Tibbs's personal opinion and his own evaluation of the case. Nothing in the statement refers to or implies that it was made by defense counsel.

In the circumstances of the matter *sub judice*, there was no clear prejudice to the defendant shown since the witness did not state that it was Tibbs's counsel who expressed doubt as to the strength of Tibbs's defense.

The decision of whether to grant a mistrial is vested in the discretion of the trial judge and will not be disturbed on appeal unless there was clear prejudice to the defendant. *Russell v. State*, 69 Md.App. 554, 518 A.2d 1081 (1987). Moreover, a mistrial will only be granted under extraordinary circumstances and where there is manifest necessity to do so. *Id.*

### III

"The prosecutor's repeated misconduct at trial through improper comment and questioning and certain trial court rulings which were the result of that misconduct were so prejudicial that appellant was denied a fair trial and Due Process of law."

Tibbs points to eight instances of alleged prosecutorial misconduct that, he asseverates, individually and collective-

ly, denied him a fair trial and Due Process. We shall discuss each of those eight happenings.

First, appellant complains that during opening statement the prosecutor repeatedly made improper comments, including discussing aspects of armed robbery, conspiracy, and felony murder, and related her opinion as to why Tibbs and his companions were perspiring when they were located by the police. Tibbs's view to the contrary, the comments were within the reasonable scope of opening statement. The purpose of an opening statement is to apprise the fact finders of what the State or the defense expect the evidence to show. *Wilhelm v. State*, 272 Md. 404, 326 A.2d 707 (1974). The statement "is not evidence and generally has no binding force or effect." *Id.* at 412, 326 A.2d 707. To obtain a reversal based on opening statement by the State, the accused must show "bad faith on the part of the prosecutor in the statement of what the prosecutor expects to prove or establish substantial prejudice resulting therefrom." *Id.*, citing *Clarke v. State*, 238 Md. 11, 207 A.2d 456 (1965); *Ott v. State*, 11 Md.App. 259, 273 A.2d 630, *cert. denied*, 262 Md. 748 (1971). There is no evidence in the instant case of "bad faith" or "substantial prejudice resulting therefrom."

Second, at a hearing prior to trial, the prosecutor sought to establish the chain of custody of the victim's body. Defense counsel indicated that he would stipulate to the chain of custody in order to avoid an emotional scene by the family members, which counsel believed would be prejudicial to the defendant. Tibbs makes much ado about nothing. The judge prevented the testimony from ever reaching the jury. Consequently, there was no issue of prejudice to which the evidence of bad faith would be relevant. Hence, the matter is not before this Court. Md. Rule 1085; *Ball v. State*, 57 Md.App. 338, 470 A.2d 361 (1984).

Third, during trial the following incidents occurred:

(1) The prosecutor improperly questioned a State's witness regarding testimony at the prior trial of a codefendant. Defense counsel objected, and the court sustained the objection before the witness answered. The judge admonished the prosecutor and once again offered to give the jury a curative instruction, which defense counsel declined.

(2) The prosecutor endeavored to have a witness describe the clothes Tibbs wore on the day of the incident. During cross-examination the witness indicated that the only reason she could identify the clothes Tibbs wore was because prior to trial she had seen color photographs which had been taken of him. Defense counsel objected to the witness's photospread identification because that photospread had not been disclosed to him before trial. He asserted that he was ill prepared to challenge the evidence.

The trial court struck the witness's reference to appellant's clothing, but the judge left intact her identification of Tibbs.

Appellant now argues that the prosecutor's nondisclosure of the pretrial photospread identification violated Md.Rule 4–263(a)(2), causing serious prejudice to the defense and violating the appellant's rights to Due Process. He asserts that, although the trial court corrected the identification with a curative instruction, the prejudice was not mitigated because too much time elapsed. This latter assertion is based on the fact that a weekend recess occurred between the testimony of the witness and the giving of the curative instruction.

Appellant contends that either the entire identification of Tibbs should have been stricken or a mistrial declared. We see the matter in an entirely different light.

■ Following the weekend recess, the judge conducted an *in camera* hearing. The witness explained that her identification of Tibbs was not based on the pretrial photograph identification, but that her description of his clothing was based on those photographs. Inasmuch as the court provided a curative instruction to the jury regarding the

witness's description of Tibbs's clothing, the matter was properly handled. "[W]hen curative instructions are given, it is presumed that the jury can and will follow them." *Brooks v. State*, 68 Md.App. 604, 515 A.2d 225 (1986); *see also Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Wilson v. State*, 261 Md. 551, 276 A.2d 214 (1971).

The witness's testimony that the photographic spread did not influence her identification of Tibbs, together with her opportunity to view Tibbs shortly after the murder, satisfies *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Foster v. State*, 272 Md. 273, 323 A.2d 419 (1974); and *Dobson v. State*, 24 Md.App. 644, 335 A.2d 124 (1975).

The fourth incident occurred when the prosecutor asked the accomplice Roscoe, "Can you tell the ladies and gentlemen of the jury, was there ever any concern for what happened to the victim in this case?" The judge sustained appellant's objection and again admonished the prosecutor. Defense counsel's motion for mistrial was denied. Tibbs contends that either the mistrial should have been granted or the jury should have been told that the question was improper.

The transcript of the trial indicates that defense counsel did not ask the court for a curative instruction. The matter, therefore, is not properly before us. Moreover, whatever prejudice the improper question may have caused was *de minimis* considering that the witness did not respond to it. *See generally Wilhelm v. State*, 272 Md. 404, 326 A.2d 707 (1974).

Tibbs's fifth example of prosecutorial overreaching is a "rerun" of the issue raised in parts I and II of this opinion, namely, that the prosecutor elicited the statement made by appellant that "things looked bad." Having previously disposed of that contention, we see no reason to repeat our discussion.

Sixth, Tibbs additionally maintains that the prosecutor engaged in repeated attempts to elicit inadmissible testimo-

ny. The transcript shows that the trial court sustained seven consecutive objections made on hearsay grounds. The judge told the prosecutor not to ask any more of that type of question. Despite the court's admonition, the prosecutor asked the witness if he could "tell the ladies and gentlemen of the jury are you familiar with the fact that Mr. Moore also said someone in there looked like the shooter?" That question, of course, called for a response that was unadulterated hearsay.

Defense counsel promptly moved for mistrial. He grounded his motion on prosecutorial misconduct, asserting that the question was in "flagrant disregard" of the court's ruling. The mistrial request was denied.

As we have previously said herein, the granting or denial of a mistrial is in the sound discretion of the trial court. *Guesfeird v. State*, 300 Md. 653, 480 A.2d 800 (1984); *Wilhelm v. State, supra*. A mistrial is an extraordinary measure for which there must be shown manifest necessity. *Russell v. State*, 69 Md.App. 554, 518 A.2d 1081 (1987). Notwithstanding that the prosecutor's question was improper, the record does not demonstrate prejudice sufficient to require the imposition of the extraordinary measure of mistrial. There was no "manifest necessity" for that remedy, and we decline to hold that the trial judge, the person in the best position to evaluate the effect of the improper question, abused his discretion in denying the mistrial request.

Seventh, Tibbs complains concerning comments made during the prosecutor's closing argument and rebuttal. Specifically, Tibbs cites the prosecutor's statement, "I think it is far [more] ridiculous for a lawyer to come up here and tell you...." That statement was never finished because Tibbs's counsel objected. The trial court merely commented that the prosecutor should "go on with the argument." Whatever the prosecutor's thought, her sentence was never completed. As a result, there was very little, if any, harm done with respect to what she said.

In her closing argument the prosecutor made various comments which either directly or indirectly concerned Tibbs's right to remain silent. The prosecutor said:

"Ladies and gentlemen of the jury, Mr. Monfried brings you in Detective Fahlteich to tell you that Kenneth Moore [a witness at the trial of an accomplice] picked out Joseph Roscoe [an accomplice] as the shooter. Now, isn't the best evidence of that Kenneth Moore? [4] There is a rule that says the State, whoever calls a witness cannot impeach a witness, cannot say you made a mistake. He can't do that. You can't call somebody to the stand and say that they are wrong. *I can't call Kenneth Moore to the stand and say that he is wrong. I can't do that. I knew Mr. Monfried would try to get this evidence in somehow."* (Emphasis added.)

Following an objection, the judge gave a curative instruction.

The prosecutor continued:

"And His Honor said, there is no obligation on the defendant and there is no obligation on the defendant to prove *that this wasn't his handwriting."* (Emphasis added.)

When the trial court overruled an objection, defense counsel said:

"The objection is she says in reverse what she couldn't say the other way. Just because I didn't call, she can't then say that I could have called. She can't then say that ... And then stand up and holds a piece of paper and says I didn't call handwriting experts to prove it."

■ The trial judge apparently reconsidered and then gave another curative instruction. The prosecutor once again charged into the area where "angels fear to tread" [5]

---

**4.** Moore's identification of Tibbs was suppressed as the result of a pretrial motion hearing. Hence, Moore was not called by the State as a witness.

**5.** Alexander Pope (1688–1744), *An Essay on Criticism,* Part III, line 66.

and made an improper comment concerning the defendant's choice in the production of evidence. She told the jury:

"And Rodney Johnson told you I never agreed to let Rodney Johnson out on bail. That was the Judge's decision. Rodney Johnson told you that was not part of the plea agreement, and there was no plea agreement— on the day that he pled guilty, there was a stenographer in here to take down his guilty plea in front of the Judge and it was all done on the record, *ladies and gentlemen of the jury, so if there was any evidence of that, believe me it would have been presented to you.*" (Emphasis added.)

The court sustained defense counsel's objection and gave another curative instruction.

■■ A prosecutor's argument which comments on a defendant's right to remain silent is improper, *Elsey v. State,* 288 Md. 548, 419 A.2d 384 (1980); and *Bowler v. U.S.,* 480 A.2d 678 (D.C.App.1984), but the impropriety was cured by the judge's timely instruction.

Although the prosecutor made several improper comments in her closing argument, as well as throughout the trial, the trial judge, who exhibited the patience of Job, took measures to mitigate any prejudicial effects those comments may have had. We think his curative instructions sufficed to undo the mischief the prosecutor seemed determined to do.

Tibbs argues that, even if each individual instance of improper comment by the prosecutor, standing as a separate part, were not severe enough to cause the granting of a mistrial, the sum total of all the parts constitutes a degree of prosecutorial misconduct that necessitates reversal.

■■ The State responds by asserting that it is improper to consider the prosecutor's actions as a whole if there has been no reversible error found in the complaints individually. *Peisner v. State,* 236 Md. 137, 202 A.2d 585 (1964). *Peisner,* however, is inapposite. In *Peisner,* the "errors" had not been preserved or were imperfectly presented when

considered individually. The improprieties in the instant
case were preserved for the most part and were addressed
during trial. Ergo, we may consider the improprieties in
the aggregate in order to determine whether the conduct
falls within *Mouzone v. State,* 33 Md.App. 201, 364 A.2d 58
(1976). There, this Court reversed a conviction after re-
viewing six instances of alleged prosecutorial impropriety.

The Maryland rule governing whether a conviction will be
reversed because of prosecutorial misconduct is that "it
[must appear to the appellate court] that the jury were
actually misled or were likely to have been misled or influ-
enced to the prejudice of the accused by the remarks of the
State's Attorney." *Reidy v. State,* 8 Md.App. 169, 259 A.2d
66 (1969).

Judge Melvin for this Court in *Mouzone v. State,* 33
Md.App. at 209, 364 A.2d at 63, reiterated what was said by
the Court of Appeals in *Wilhelm v. State,* 272 Md. at 416,
326 A.2d at 716, which in turn quoted *Gaither v. United
States,* 413 F.2d 1061, 1079 (D.C.Cir.1969), where it was
said:

> "The applicable test for prejudice is whether we can
> say, with fair assurance, after pondering all that hap-
> pened without stripping the erroneous action from the
> whole, that the judgment was not substantially swayed
> by the error. The decisive factors are [1] the closeness of
> the case; [2] the centrality of the issue affected by the
> error, and [3] the steps taken to mitigate the effects of
> the error". (Citations omitted.)

We reversed in *Mouzone, supra,* which was a close case,
because its outcome depended directly on the credibility of
the defendant, vis-a-vis a single State's witness. That ei-
ther of the two, the defendant or the witness, had shot the
victim was beyond question. Their backgrounds were near-
ly equal, and the verdict was the result of an apparent
compromise. *Id.* 33 Md.App. at 210, 364 A.2d at 63.

■ Unlike *Mouzone,* the improprieties of the prosecutor
in the case *sub judice* did not bear significantly on the

outcome because this was not a "close case." We, there-fore, need not consider the second two "decisive factors" stated in *Gaither,* iterated in *Wilhelm,* and reiterated in *Mouzone.*

All persons accused criminally are entitled to Due Process and a fair trial, irrespective of the seriousness of the criminal charges. The law demands no more and is satis-fied with no less. The case against Tibbs was strong; in fact, there was overwhelming evidence that he shot and killed the victim. Despite the prosecutor's misguided zeal, the trial judge promptly mitigated any prejudice to Tibbs by giving curative instructions to the jury, when appropriate. As a result, Tibbs did receive Due Process and a fair trial.

### IV

"The trial court erred in denying appellant's motion for new trial."

Penultimately, Tibbs avers that at a hearing on his motion for new trial that he possessed "newly discovered evidence." That evidence was that a witness for the State had testified in anticipation of a reduced bail. Tibbs argues that the trial judge's denial of a new trial motion was an abuse of discretion. He declares that the jury was entitled to know that the witness's bail was reduced after testifying, because that evidence would have been relevant to a motive as to why the witness gave favorable testimony for the State.

Newly discovered evidence is among the principal grounds for granting a new trial, *Pinkney v. State,* 9 Md.App. 283, 263 A.2d 871 (1970), but contrary to the way Tibbs sees it, there was no newly discovered evidence in this case. During trial, the witness stated that there was no agreement that bail be lowered in exchange for his testimo-ny. Moreover, the judge who reviewed the witness's bail status said that there was no agreement, express or im-plied, between, the witness and the State as to bail.

Whether to grant a motion for new trial lies within the sound discretion of the court and will not be disturbed on appeal, unless that discretion has been clearly abused. *Lancaster v. Gardiner,* 170 A.2d 181, 225 Md. 260, *cert. denied,* 368 U.S. 836, 82 S.Ct. 63, 7 L.Ed.2d 37 (1961); *Hanley v. Stulman,* 141 A.2d 167, 216 Md. 461 (1958). The record before us does not suggest that the witness expected a bail reduction in exchange for his testimony, and we shall not speculate as to what was neither expressed between the parties nor implied from the record. We think the trial judge did not abuse his discretion in denying Tibbs's motion for a new trial.

### V

#### *Victim Impact Statement*

"The trial court erred when it considered victim impact testimony at appellant's sentencing."

By statute, Maryland allows a member of the victim's immediate family to address the court at sentencing. Md. Ann.Code art. 27, § 643D(a) provides:

"In every case resulting in serious physical injury or death, the victim or a member of the victim's immediate family, or if the victim is deceased, under a mental, physical, or legal disability, or otherwise unable to provide the required information, the personal representative, guardian, or committee, or other family member may, at the request of the State's Attorney and in the discretion of the sentencing judge, address the sentencing judge or jury under oath or affirmation before the imposition of sentence." [6]

In the case *sub judice* the victim's father informed the court of the impact that the crime had on his family. He

---

6. The Supreme Court in *Booth v. Maryland,* —— U.S. ——, —— n. 10, 107 S.Ct. 2529, 2535 n. 10, 96 L.Ed.2d 440 (1987), held the statute unconstitutional insofar as death penalty cases are concerned. The Court expressly did not rule on whether the statute was unconstitutional in noncapital cases.

recommended that the maximum sentences be imposed. Because the sentences recommended by the father were exactly the same as that meted to Tibbs, the latter perceives an invidious denial of Due Process and fundamental fairness.

The argument advanced by Tibbs ignores the fact that the State recommended the exact same sentence as that suggested by the father and imposed by the Court. A trial judge may properly consider the impact a crime has had upon its victims before passing on the defendant's sentence. *Hurley v. State*, 60 Md.App. 539, 483 A.2d 1298 (1984).[7]

There is nothing in the record from which we can conclude that the judge was improperly influenced by the testimony of the victim's father, and we refuse to infer improper influence simply from the fact that appellant received the sentence suggested by the father of the victim. The sentences are within the statutory limits and do not appear to have been dictated by passion, ill will, or other unworthy motive. *Davis v. Warden of Md. Penitentiary*, 235 Md. 637, 201 A.2d 672 (1964); *see also Brooks v. Warden, Md. Penitentiary*, 1 Md.App. 1, 226 A.2d 354 (1967).

Lastly, Tibbs mounts a constitutional challenge to the admission of the testimony of the father of the victim. That issue was not presented at trial and is not properly before us. Md.Rule 1085. We do not consider it.[8]

Usually we would conclude our opinion at this point, but this is not the usual situation. We would be remiss in our duty if we did not comment upon the prosecutor's unbounded zeal.

---

7. But see n. 6, *supra*.

8. See, however, n. 6, *supra*.

Many years ago it was said that "zeal is very blind, or badly regulated when it encroaches upon the rights of others." [9]

More recently in *Little v. Duncan,* 14 Md.App. 8, 284 A.2d 641 (1971), we said: "Zeal in advocacy is commendable, but zeal, even in advocacy, without bounds may be contemptuous and disruptive." The prosecutor's conduct, in the case now before us, was disruptive, if not contemptuous. Furthermore, the prosecutorial zeal displayed in the case *sub judice* came perilously close to requiring a retrial; and, but for the overwhelming evidence of appellant's guilt, that result most certainly would have been followed. On oral argument the State candidly admitted prosecutorial misconduct but correctly observed that, because of the strong evidence against Tibbs, reversal was not mandated.

We recognize that a trial is not an afternoon tea or other polite social event. On the other hand, it is not trial by combat. The courts, over the years, have laid out carefully delineated boundaries in which the adversaries are free to fight. Contests are, however, confined to the area within the boundaries and governed by specific rules. It is counsel's duty to abide by the rules and remain within the boundaries.

The prosecutor in this case was admonished by the court for questionable conduct on at least twelve different occasions. Additionally, on at least one of those occasions, she was threatened with a $500 fine for contempt of court.

Although the trial judge did "keep the lid on" the proceeding, perhaps he should have been a little less paternal and a little more authoritative. If that had occurred, we think it likely that many of the issues raised in this appeal would have been aborted at trial.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

---

9. Believed to be from *Reflexiones Morales Sur Le Nouveau Testament* (1687) by Pasquier Quesnel (1634–1719).